**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KAMI B.,

                             Plaintiff,

                                                                     5:18-CV-1497

            v.                                                            (DJS)

ANDREW M. SAUL,[1]
*Comm'r of Soc. Sec.*,

                             Defendant.

**APPEARANCES:**                                   **OF COUNSEL:**

LAW OFFICES OF STEVEN R. DOLSON      STEVEN R. DOLSON, ESQ.
Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.             JAMES DESIR, ESQ.
OFFICE OF REGIONAL GENERAL COUNSEL
REGION II
Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. The Clerk of Court is respectfully directed to amend the caption.

- 1 -

# DECISION and ORDER[2]

Currently before the Court, in this Social Security action filed by Kami B. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 7 & 10. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted. The Commissioner's decision denying Plaintiff disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on September 24, 1978, making her 37 years old at the alleged onset date ("AOD") and 39 at the date of the ALJ's decision. Dkt. No. 6, Admin. Tr. ("Tr."),[3] p. 32. Plaintiff reported completing high school, and completing some college courses. Tr. at pp. 33-34. Plaintiff has past work serving as a supply sergeant in the US Army. Tr. at p. 190. Plaintiff alleged disability due to endometriosis, peritoneal adhesions, cervical spine impairment, bilateral carpal tunnel syndrome, right shoulder

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

[3] Due to the size of the administrative transcript, it is contained within Dkt. Nos. 6 through 6-9. The Bates numbering is consecutive throughout the transcript; as such, it will be collectively referred to as "Tr."

impairment, left hip impairment, arthritis, migraines, thyroid impairment, and adjustment disorder. Tr. at p. 56.

## B. Procedural History

Plaintiff applied for Disability Insurance Benefits on October 2, 2017. Tr. at pp. 147-158. Her application was denied. Tr. at pp. 74-83. Plaintiff requested a hearing, and a hearing was held on July 19, 2018 before Administrative Law Judge ("ALJ") Bruce Fein at which Plaintiff was accompanied by a representative and testified. Tr. at pp. 28-54. The ALJ issued a decision finding Plaintiff not disabled on August 31, 2018. Tr. at pp. 7-27. Plaintiff requested review of the ALJ's determination, and the Appeals Council denied the request for review on August 2, 2018. Tr. at pp. 1-4. Plaintiff filed her Complaint in this action on December 28, 2018. Dkt. No. 1.

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. Tr. at p. 12. Second, the ALJ found that Plaintiff did not engage in substantial gainful activity since the alleged onset date of December 15, 2015. *Id*. Third, the ALJ found that Plaintiff's had the following severe impairments: hip osteoarthritis, low back pain, neck pain, endometriosis, fibromyalgia, and an adjustment disorder with anxiety and depression. Tr. at pp. 12-14. Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. §

404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 14-16. Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except

> she can occasionally climb, balance, stoop, kneel, crouch, and crawl; can perform a low stress job defined as only occasional decision-making, changes in the work setting, and judgment required; and can have occasional interaction with co-workers, supervisors, and the public.

Tr. at pp. 16-21. Sixth, the ALJ found that Plaintiff is unable to perform her past relevant work. Tr. at p. 21. The ALJ found that Plaintiff was born on September 24, 1978 and was 37 years old, which is defined as a younger individual age 18-44 on the alleged disability onset date, and that she has at least a high school education and is able to communicate in English. *Id.* The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding Plaintiff is "not disabled," whether or not she has transferable job skills. *Id.* The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 21-22. Seventh, and last, the ALJ concluded that Plaintiff has not been under a disability from December 15, 2015, through the date of his decision. Tr. at p. 22.

### D. The Parties' Briefings on Their Cross-Motions

In her Motion for Judgment on the Pleadings, Plaintiff makes two arguments. Dkt. No. 7, Pl.'s Mem. of Law, *generally*. Plaintiff first contends that the RFC is not supported by substantial evidence because the ALJ improperly assessed the medical source statements of Dr. Allam and Dr. Grewal. *Id.* at pp. 5-9. Plaintiff contends that the ALJ

- 4 -

failed to substantiate his analysis of the opinions and failed to discuss certain of the factors outlined in 20 C.F.R. § 404.1520(c). *Id.* Second, Plaintiff contends that the ALJ failed to include functional limitations stemming from the medically determinable impairment of carpal tunnel syndrome when formulating the RFC. *Id.* at pp. 9-13. Plaintiff contends that it was error for the ALJ to not find Plaintiff's carpal tunnel syndrome to be severe, and for the ALJ to fail to discuss the effects of the medically determinable impairment. *Id.*

In response, Defendant contends that the ALJ discussed Plaintiff's carpal tunnel syndrome in detail and that substantial evidence supports his finding that it was not severe and that even if it were, finding it not severe would be a harmless error because the ALJ found Plaintiff had other severe impairments. Dkt. No. 10, Def.'s Mem. of Law, pp. 6-9. Defendant contends that the ALJ's RFC is supported by substantial evidence, and that the ALJ adequately considered the medical opinions and sufficiently explained the weight he assigned to them. *Id.* at pp. 9-16.

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct

legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520 & 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the ALJ Committed an Error at Step Two

Plaintiff contends that it was error for the ALJ to not include her carpal tunnel as a severe impairment. Pl.'s Mem. of Law at pp. 9-13. Plaintiff asserts that this finding was contrary to substantial evidence of record. *Id.* She describes that she has been diagnosed with carpal tunnel syndrome by a number of physicians, and that she has received significant treatment related to the condition. *Id.* at pp. 10-12. Plaintiff contends that even if it were not error to fail to include carpal tunnel as a severe impairment, the ALJ erred by not considering its limiting effects in determining Plaintiff's RFC. *Id.* at p. 12.

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008)); *see also* 20 C.F.R. § 404.1522(b). "Although the Second Circuit has held that this step is limited to 'screening out de minimis claims,' [ ] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*,

54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Taylor v. Astrue*, 32 F. Supp. 3d at 265 (citing *Miller v. Comm'r of Soc. Sec.*, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

The failure to find a specific impairment severe at Step Two is harmless where (a) the ALJ concludes there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *report and recommendation adopted*, 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

In this case, the ALJ considered Plaintiff's carpal tunnel syndrome and found it to not be a severe impairment. Tr. at p. 14. In making this determination, the ALJ explicitly considered the relevant evidence in the record. *Id.* He explained that

> In August 2015, the claimant's EMG showed mild, right median neuropathy at the wrist (Exhibit 5F, page 9). On May 11, 2017, the claimant underwent a right carpal tunnel release (Exhibit 5F, pages 61-62). On August 30, 2017, the claimant's carpal tunnel treatment provider released the claimant to return to work without restrictions (Exhibits 5F, page 69 and

> 11F, page 1). In November 2017, the claimant was given a diagnosis of left wrist carpal tunnel syndrome (Exhibit 6F, pages 17 & 24). Despite her carpal tunnel syndrome, upon consultative examination, the claimant had intact hand and finger dexterity and 5/5 grip strength (Exhibit 8F, page 4). In May 2018, the claimant's EMG demonstrated "very mild" right carpal tunnel syndrome, and the claimant declined study of her left arm stating that her symptoms were much worse on the right (Exhibit 17F, page 15). The record did not evidence the claimant's right or left carpal tunnel syndrome imposing more than minimal limitations on her ability to perform basic work activities for 12 continuous months.

*Id.*

Plaintiff argues that the ALJ's severity determination is contrary to substantial evidence. Pl.'s Mem. of Law at p. 10. If supported by substantial evidence, however, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. at 153. As such, the question is not whether there may be substantial evidence in the record to support Plaintiff's position, but whether substantial evidence supports the ALJ's determination.

In arguing it was error to not find her carpal tunnel syndrome severe, Plaintiff focuses on the fact that she has been diagnosed with carpal tunnel syndrome. Pl.'s Mem. of Law at pp. 10-11. "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." *Bergeron v. Astrue*, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011) (quoting *McConnell v. Astrue*, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)). "The severity of an impairment is not determined merely by diagnosis, but

by the limitations imposed by the impairment." *Tillis v. Colvin*, 2016 WL 8674672, at *2 (N.D.N.Y. Mar. 11, 2016).

The ALJ explained in detail why he did not find Plaintiff's carpal tunnel syndrome to be severe, and Plaintiff does not raise any specific issue with that analysis, instead arguing that there is other evidence that would constitute substantial evidence to support a finding that Plaintiff's carpal tunnel syndrome is severe. The Court will not reweigh the evidence that was before the ALJ. *Warren v. Comm'r of Soc. Sec.*, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016), *report and recommendation adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

In any event, the ALJ discussed potential limitations of Plaintiff's carpal tunnel in determining her RFC. While the ALJ did not mention Plaintiff's carpal tunnel syndrome by name in his RFC analysis, he noted that in her consultative examination, Plaintiff exhibited "5/5 strength in her upper and lower extremities . . . intact hand and finger dexterity, and 5/5 grip strength." Tr. at p. 18. He also noted that the consultative examiner

opined that Plaintiff had "no gross limitations for . . . handling small objects with her hands." *Id.* The ALJ therefore did consider possible limitations caused by the impairment in considering her RFC. *See Sherman v. Comm'r of Soc. Sec.*, 2015 WL 5838454, at *4 (N.D.N.Y. Oct. 7, 2015). Given that these potential limitations were considered in the overall evaluation of Plaintiff's functional limitations, any failure to find them severe at step two was harmless. The ALJ's Step Two analysis is therefore not a basis for remand.

**B. Whether the ALJ Properly Assessed the Opinions of Drs. Allam and Grewal**

Plaintiff contends that the ALJ failed to properly consider the medical source statements of Doctors Fatme Allam and Harminder Grewal. Pl.'s Mem. of Law at pp. 5-9. Plaintiff contends that the ALJ failed to substantiate his finding that the opinions lacked consistency or support by substantial evidence in the record, arguing that the opinions are consistent with each other and with the opinion of the consultative examiner, Dr. Lorensen. *Id.* at p. 6. She contends that the ALJ did not discuss the purpose, length, or extent of treatment relating to Dr. Grewal, and argues that Dr. Grewal's treatment notes, findings, and treatments support his findings. *Id.* at pp. 6-7. Plaintiff states that Dr. Allam saw Plaintiff in April and June of 2018, requested hip injections, and was a party to rheumatology determinations regarding her osteoarthritis. *Id.* at p. 7. Plaintiff also describes evidence in the record that she alleges substantiates these providers' opinions. *Id.* at pp. 7-8. Plaintiff further contends that her daily activities are consistent with the opinions. *Id.* at pp. 8-9.

The Social Security Administration has promulgated a new regulation regarding medical opinions that is applicable to claims filed on or after March 27, 2017, and

therefore applies to Plaintiff's claim. 20 C.F.R. § 404.1520c. The new regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *Id.* at § 404.1520c(a). The ALJ will consider a medical opinion using the factors listed in the regulation, "as appropriate"; "[t]he most important factors [the ALJ] consider[s] when [he or she] evaluate[s] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The ALJ must explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a] determination or decision," and "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [he or she] articulate[s] how [he or she] consider[ed] medical opinions." *Id.* at § 404.1520c(b)(2).

The two "most important factors," which must be considered, are: (1) "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be"; and (2) "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1) & (2).

The ALJ must also consider, although need not articulate, the medical source's relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at §§ 404.1520c(b)(2) & 404.1520c(c)(3)-(5). Where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record but not exactly the same, however, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at § 404.1520c(b)(3).

The ALJ found Dr. Allam's opinion "not very persuasive," explaining that Dr. Allam "has a limited treatment history" with Plaintiff, and her opinion "was not entirely supported by the claimant's treatment notes and clinical findings and was somewhat inconsistent with the claimant's activities and other opinions of record." Tr. at p. 18. As Plaintiff describes in her brief, Dr. Allam treated Plaintiff in April and June of 2018. Pl.'s Mem. of Law at p. 7; Tr. at p. 2593. The ALJ's statement that Dr. Allam has a limited treatment history with Plaintiff is therefore accurate. Plaintiff is correct that the ALJ did not, in his discussion of Dr. Allam's opinion, explain in detail why he found those opinions not to be consistent with or supported by the evidence in the record. Although not in direct connection with his discussion of Dr. Allam's opinion, the ALJ explained the findings in the record earlier in his decision.

Dr. Allam opined that Plaintiff's symptoms would interfere with her attention and concentration needed to perform even simple work tasks over 30%; she can walk "very little"; she can sit for 20 minutes at one time; she can stand for two minutes at a time; she can sit for at least six hours in an eight-hour work day; she can stand or walk less than

- 14 -

two hours in an eight-hour work day; needs a job that permits shifting positions at will from sitting, standing or walking; will need to take unscheduled breaks during an eight-hour work day every hour, and will need to lie down or sit during that time; she must use a cane or other assistive device while engaging in occasional standing or walking; that she can only lift up to 10 pounds occasionally and 20 pounds rarely; she can occasionally look down, turn head right or left, look up, or hold head in static position; she can rarely twist, climb ladders or climb stairs, and never stoop or crouch/squat; has significant limitations with reaching, handling, and fingering; that her impairments are likely to cause her to be absent from work more than four days per month; and that she is not capable of sustaining full time work. Tr. at pp. 2593-2595.

In discussing at length Plaintiff's medical records, the ALJ recounted that in April 2016 Plaintiff showed "normal gait and stance," in August 2016 "no motor dysfunction," that in March 2017 she had "no weakness in her right hip or left hip," and in April, May, and July of 2017 had "full painless range of motion in her lumbar spine, negative straight-leg raising tests, and 5/5 strength in her lower extremities." Tr. at p. 17. He recounted that in November 2017 she had "normal muscle tone, no atrophy, and normal active range of motion and strength testing bilaterally," and in December 2017, "the results of [Plaintiff's] cervical spine MRI were unremarkable." *Id.* In January 2018, at consultative examination Plaintiff "was in no acute distress, needed no help changing for the exam or getting on and off of the exam table, rose from a chair without difficulty, and exhibited a normal gait and stance, full range of motion in her cervical spine other than rotation to the right to 60 degrees, negative straight-leg raising tests, stable and nontender joints,

physiologic and equal deep tendon reflexes, no sensory deficits, 5/5 strength in her upper and lower extremities, no muscle atrophy, intact hand and finger dexterity, and 5/5 grip strength." Tr. at pp. 17-18. The ALJ also described that in 2018 Plaintiff "reported taking care of children, preparing simple food, driving, and shopping," and that she "cooked twice a week, cleaned once a week, and shopped once a week." Tr. at p. 17. There are clear inconsistencies between Dr. Allam's drastic findings and Plaintiff's treatment records, as recounted in the ALJ's summary of the physical evidence. In addition, the ALJ found the consultative examiner's opinion that Plaintiff had "no gross limitations for sitting, standing, walking, or handling small objects with her hands; and mild limitations for bending, lifting, reaching, pushing, and pulling with the right arm" to be "somewhat persuasive." Tr. at p. 18 (citing Ex. 8F).

Finally, Plaintiff takes issue with the ALJ's characterization of Plaintiff's activities of daily living. Pl.'s Mem. of Law at p. 9. In her adult function report, Plaintiff reported that she takes care of children, prepares simple food, drives limited distances, and shops weekly. Tr. at pp. 204-206. She also reported to the consultative examiner that she cooked twice a week, cleaned once a week, and shopped once a week. Tr. at p. 2064. Plaintiff points out further limitations she has in carrying out these activities, however, the Court does not find that these potential discrepancies render the ALJ's analysis invalid. The ALJ's conclusion that Dr. Allam's opinion was not entirely supported by Plaintiff's treatment notes and clinical findings and was somewhat inconsistent with her activities and other opinions of records is supported by substantial evidence.

Similarly, the ALJ found that Dr. Grewal's opinion was "not supported by the claimant's treatment notes or clinical findings and was inconsistent with her activities and other opinions of record." Tr. at p. 19. Dr. Grewal opined that Plaintiff's symptoms are severe enough to interfere with attention and concentration needed to perform even simple work tasks over 30% of a typical workday; that she can walk no city blocks without rest or severe pain; she can sit for 15 minutes at one time and stand for five minutes at one time; she can sit for less than two hours total in an eight-hour work day and stand or walk for less than two hours in an eight-hour work day; she needs to walk around every fifteen minutes for five minutes each time; that she requires a job that permits shifting positions at will; that she will need to take unscheduled breaks during an eight hour work day, every day, and will need two to three days to rest before returning to work; she must use a cane or other assistive device when engaging in occasional standing/walking; she can lift and carry less than 10 pounds frequently and up to 10 pounds rarely; she can occasionally look down, turn head right or left, or look up, and frequently hold head in static position; she can rarely twist, stoop, crouch/squat, and climb stairs, and never climb ladders; she has significant limitations with reaching, handling, or fingering; she will be absent from work more than four days per month; and she is not capable of sustaining full time work. Tr. at pp. 2637-2639. As described above in connection with Dr. Allam's opinion, the ALJ described notes, clinical findings, and daily activities that are inconsistent with Dr. Grewal's opinion.[4]

---

[4] Plaintiff also cursorily asserts that the ALJ "failed to discuss the specialties of Dr. Grewal, and Dr. Allam, respectively. The Administrative Law Judge thus failed to consider the factors specifically outlined in § 404.1520(c)," Pl.'s Mem. of Law at p. 8, and that the ALJ "makes no mention of the purpose, length or exten[t] of

The ALJ's determination that the opinions of Drs. Allam and Grewal were not supported by the claimant's treatment notes or clinical findings and were inconsistent with her activities and other opinions of record is supported by substantial evidence.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Dated: January 16, 2020
       Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge

---

the treatment," of Plaintiff, *id.* at pp. 6-7. It is not apparent to the Court that the ALJ did find the opinions to be "equally well supported" and "consistent with the record," but "not exactly the same" on the same issue, and so the Court declines to find the ALJ was required to perform any further analysis. *See* 20 C.F.R. § 404.1520c(b)(3).